**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOSEPH E. KENNEDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-05-1440-F |
| ) | |
| GUTHRIE PUBLIC SCHOOLS, ) | |
| INDEPENDENT DISTRICT NO. I-001 ) | |
| OF LOGAN COUNTY, a political ) | |
| subdivision of the State of Oklahoma, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter comes before the court on the motion of the defendant Guthrie Public Schools, Independent District No. I-101 of Logan County (the "Guthrie School District") for summary judgment filed December 4, 2006 (doc. no. 33). The plaintiff, Joseph E. Kennedy, has responded to the motion, and the defendant has replied. After careful consideration of the parties' submissions, the record, and all relevant arguments and authorities, the court makes its determination.

<u>Summary Judgment Standard</u>

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed. R. Civ. P. The moving party has the burden of showing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the court must review

the record in the light most favorable to the party opposing summary judgment. National Aviation Underwriters, Inc. v. Altus Flying service, Inc., 555 F.2d 778, 784 (10th Cir. 1977).  Once the moving party has met its burden, the opposing party must come forward with specific evidence, not merely allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

### Nature of the Case

For purposes of this motion, the relevant facts, viewed in the light most favorable to the plaintiff, are as follows.  Mr. Kennedy became the principal of Guthrie's Faver Alternative School ("Faver") at the beginning of the 1997-1998 school year.  For a number of years, Mr. Kennedy was the only African-American administrator employed by the Guthrie School District. Faver occupies its own separate campus and serves students who are at a higher than average risk of dropping out or who have posed disciplinary problems.  Alternative schools typically have classes with low student to teacher ratios and allow students to proceed with their studies at a different pace than the typical classroom environment.

As Faver's principal, Mr. Kennedy was responsible for a total student population of 38-40 students.  During the 2005-2006 school year he supervised a staff of two full-time teachers, one half-time teacher, one secretary, and one half-time custodian. Every other site operated by the Guthrie School District has a significantly larger student population and a significantly greater number of teachers than does Faver.

During the 2004-2005 school year, the Guthrie School District initiated a survey to determine whether its administrative salaries were in line with those of comparably-sized Oklahoma school districts.  On behalf of the Guthrie School

District, Dr. Bill Hodges of the firm Barlow & Associates conducted a survey of the five school districts immediately larger than the Guthrie School District, the five school districts immediately smaller than the Guthrie School District, and some area schools districts that the Guthrie School District played each year in football. The subject school districts were Deer Creek, Shawnee, Weatherford, Noble, Western Heights, Ardmore, Catoosa, Chickasha, Harrah, McAlester, Pryor, Wagoner, Woodward, and El Reno. The information generated by the survey was used to calculate the average salary in the surveyed school districts for each of the Guthrie School District's administrative positions. Those average salaries became the benchmarks for recommending salary increases for the 2005-2006 school year. Based upon the survey, the Superintendent of the Guthrie School District recommended that eleven of the twenty one members of the administrative staff (excluding the Superintendent) receive raises for the 2005-2006 school year. The Superintendent testified that the Guthrie School District did not have the money to give raises to all of its administrators.

Mr. Kennedy was one of the ten administrators not recommended for a raise. The other nine administrators not recommended for raises were the personnel director, the transportation director, one of the two assistant principals at the high school, the middle school principal, the middle school assistant principal, one of the three elementary school principals, two elementary school assistant principals, and the athletic director. Those nine administrators were Caucasian.

It appears that none of the school districts surveyed on behalf of the Guthrie School District maintained an alternative school or employed an alternative school principal whose salary could be directly compared to Mr. Kennedy's. When comparing Mr. Kennedy's salary to that of the averages in the survey, the Superintendent classified Mr. Kennedy as an assistant principal. The

Superintendent stated that was because Mr. Kennedy's duties were more akin to the responsibilities of an assistant principal than those of a building principal. He was responsible for a small student body and supervised a small staff. Additionally, the educational program at Faver was subject to the ultimate authority of the high school principal.

At a Board of Education meeting held on September 12, 2005, the Board voted to accept the Superintendent's recommendation to give raises to eleven of the twenty one members of the Guthrie School District's administrative staff. Even after the raises for the 2005-2006 school year, Mr. Kennedy remained the fifth highest paid employee in the Guthrie School District. The only employees who were paid more than Mr. Kennedy were the Superintendent, the two Assistant Superintendents, and the high school principal.

On approximately September 20, 2005, the Superintendent met individually with each of the members of the Guthrie School District's administrative staff to discuss why he or she was or was not receiving a raise. At his meeting with the Superintendent, Mr. Kennedy raised the issue of his unhappiness about the condition of Faver. For years Mr. Kennedy had complained about the condition of his school and the Guthrie School District's tendency to address maintenance issues at other schools while making Faver wait for the repairs he requested. After the meeting, Mr. Kennedy emailed the Superintendent a list of twenty four repairs he claimed were necessary at Faver.

Within days after his meeting with the Superintendent, Mr. Kennedy went to the home of Board President and complained about the status of repairs at Faver and discussed his unhappiness about his salary. Mr. Kennedy told the Board President that he hoped the things he complained of were not happening for the reason he thought. The Board President understood Mr. Kennedy to mean that he

suspected he was being subjected to race discrimination. The following day, the Board President called the Superintendent and reported the conversation with Mr. Kennedy. The Board President related that Mr. Kennedy had said that the matter wasn't over and the Superintendent interpreted that to be a threat. Having just seen Mr. Kennedy at the office of the personnel director, the Superintendent confronted Mr. Kennedy and handed him a list of the names and telephone numbers of the Board members. He told Mr. Kennedy that he would save him the trouble of looking them up. He then told Mr. Kennedy that he could not believe he had "played the race card."

On September 23, the Superintendent hand delivered a letter to Mr. Kennedy responding to his email regarding repairs at Faver. The Superintendent attached a point-by-point response to each of Mr. Kennedy's twenty four listed items, and pointed out that Mr. Kennedy had never submitted a work order for many of the items on his list. The Superintendent directed Mr. Kennedy to follow the Guthrie School District's procedure and submit a work order for any repair he believed needed to be undertaken at Faver. The Superintendent also informed Mr. Kennedy that he considered his reaction to not having received a raise to be unprofessional and insubordinate. The Superintendent directed Mr. Kennedy to submit all further questions or concerns he might have regarding instruction or personnel at Faver to the personnel director. The Superintendent advised Mr. Kennedy that failure to comply with the directives could result in Mr. Kennedy's being placed on an administrative plan for improvement that could lead to termination. Mr. Kennedy was aware that the proper procedure for requesting non-emergency building repairs was to submit a work order.

The Superintendent's September 23rd letter is the basis for Mr. Kennedy's retaliation claim. Mr. Kennedy understood that the Superintendent's letter was not

a formal plan for improvement, nor was it a demotion. He did not suffer any loss of salary or benefits as a result of the letter. He did not suffer any loss of position or title. The letter did not result in any formal change in Mr. Kennedy's employment status.

Mr. Kennedy understood that the Superintendent gave him the September 23rd letter because the Superintendent believed Mr. Kennedy acted unprofessionally and went to the Board President "behind the Superintendent's back." Mr. Kennedy believes the letter was also prompted by his complaints of discrimination which the Superintendent interpreted as "playing the race card."[1] No one has told Mr. Kennedy that he did not receive a raise because he is African American. He is unaware of any witness who can testify that his race was the reason he did not receive a raise. Mr. Kennedy voluntarily resigned his employment with the Guthrie School District in August of 2006.

## Analysis

On October 4, 2005, Mr. Kennedy filed a charge of discrimination with the Oklahoma Human Rights Commission. He alleged that he had been denied equal wages compared to similarly situated white employees. He further alleged that upon his complaint that the pay disparity amounted to race discrimination, he was disciplined for insubordination by the Superintendent of the School District. The Equal Employment Opportunity Commission issued a right-to-sue letter and Mr. Kennedy brought this action for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

The Guthrie School District has moved for summary judgment on both of Mr. Kennedy's claims. It contends it is entitled to summary judgment on Mr.

---

[1] Although it is of no moment for purposes of the present motion, Mr. Kennedy's response to the present motion contains no assertion that this "race card" perception was inaccurate.

Kennedy's race discrimination claim because he cannot show that its stated reasons for denying him a pay raise were pretextual. It contends it is entitled to summary judgment on his retaliation claim because the uncontroverted facts show that Mr. Kennedy cannot establish a prima facie retaliation case and because even if he could, he has failed to show that the Guthrie Public School District's articulated nondiscriminatory reason amounts to pretext.

### 1.    Mr. Kennedy's Race Discrimination Claim

At the summary judgment stage in a Title VII action, a plaintiff may show[2] race discrimination either directly or indirectly.  Because Mr. Kennedy admits he has no evidence of direct discrimination, his claim is governed by the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  *See* <u>Goodwin v. General Motors Corp.</u>, 275 F.3d 1005, 1011-12 (10th Cir. 2002).  Thus, to survive a motion for summary judgment, Mr. Kennedy must establish first, that he was a member of a protected class and second, that he was paid less or received a lesser pay raise than other similarly-situated employees who are not members of a protected class.  <u>Amro v. Boeing Co.</u>, 232 F.3d 790, 798 (10th Cir. 2000).  Once he does so, the Guthrie School District must come forward with a legitimate, nondiscriminatory reason that Mr. Kennedy did not receive a pay raise.  *See* <u>McDonnell Douglas</u>, 411 U.S. at 802.  If the Guthrie School District cites evidence supporting a legitimate, nondiscriminatory reason for its actions, Mr. Kennedy must come forward with evidence to establish a reasonable inference that the Guthrie School District's stated reason is merely a pretext for

---

[2]The court notes that at the summary judgment stage, Mr. Kennedy is not required actually to "prove" or "establish" the elements of his claims in order to defeat the defendant's motion.  To the extent this order applies such terms to the plaintiff, it is because they are the terms employed in the case law.  The court has consistently judged Mr. Kennedy's claims by the less onerous standard appropriate at the summary judgment stage.  <u>Goodwin v. General Motors Corporation</u>, 275 F.3d 1005, 1011 at n. 7 (10th Cir. 2002).

discrimination.  Meredith v. Beech Aircraft Corp., 18 F.3d 890, 897 (10th Cir. 1994).

The Guthrie School District admits that Mr. Kennedy can establish this prima facie case with regard to his failure to receive a pay raise for the 2005-2006 school year.  It argues, however, that is entitled to judgment as a matter of law because it has identified a legitimate, nondiscriminatory reason for its failure to provide Mr. Kennedy with a pay raise for the 2005-2006 school year.  The Guthrie School District has offered evidence to support its contention that its Board of Education adjusted the salaries of administrators to bring them into line with the salaries paid by comparably-sized school districts.  It surveyed fifteen similarly-sized schools and compared the average salaries paid by those schools to the salaries the Guthrie School District paid its administrators.  Mr. Kennedy takes issue with details concerning the salary adjustment, such as whether the Board of Education approved the survey, how the survey was commissioned, and whether the Superintendent or the Board was ultimately responsible for the decisions regarding the pay raises.  Mr. Kennedy does not, however, offer any evidence to suggest that the 2005-2006 raises were not part of an effort to align the Guthrie School District's administrative salaries with the salaries paid by comparable area school districts.  Instead, he attempts to show that the salary realignment was merely a pretext for discrimination in his particular case.

Mr. Kennedy attacks the legitimacy of the Guthrie School District's stated reason for failing to raise his pay on three separate grounds.  First, he contends that the salary survey results were not the sole basis of for the school district's salary decisions.  Second, he charges that the Guthrie School District improperly classified him as an assistant principal in order to obscure the fact that as a building principal he was making less than the survey average.  Finally, he argues that the

persistent failure to maintain Faver school in the same manner as other schools in the district indicates a discriminatory animus toward him.

The court finds no support in the record for Mr. Kennedy's contention that the Guthrie School District considered factors unrelated to the survey in deciding the principals' and assistant principals' salaries.[3] The Superintendent's deposition testimony on which Mr. Kennedy relies establishes only that other factors were considered in determining the pay for the maintenance director and the transportation director. Nothing in that testimony suggests that decisions concerning the principals' and assistant principals' salaries were based upon factors unrelated to the survey results and the Guthrie School District's budgetary constraints. The Guthrie School District's considerations with regard to the salaries of the maintenance and transportation directors do not raise a reasonable inference that its stated reasons for failing to grant Mr. Kennedy a pay raise were mere pretext for race discrimination.

Mr. Kennedy's attack upon the Guthrie School District's decision to classify him as an assistant principal is likewise insufficient to demonstrate that the defendant's stated reason for its salary decision was pretextual. While the evidence shows that Mr. Kennedy could have been categorized as a middle school or high school principal, it is undisputed that he was responsible for far fewer students and a much smaller staff than were the Guthrie School District's middle

---

[3] In his response, plaintiff states flatly that "The Board president testified that the Board of Education did not approve the survey in question." Brief in Response (doc. no. 37), at 3 (citing deposition testimony of Jerry Welch). This statement, if correct, might cast serious doubt on defendant's assertion that it justifiably relied on the survey in reviewing administrative salaries. But Mr. Welch said no such thing. He testified, in the passage cited in plaintiff's response, that he did not recall whose idea the survey was, that he did not recall whether the board had to approve the survey, that he did not recall whether the survey cost anything, and that he was given the results of the survey. Misrepresentations of the record are most unhelpful to the court and do nothing for the overall credibility of counsel's briefs.

and high school principals. Furthermore, Mr. Kennedy's salary was higher than that of the Guthrie School District's own middle school principal who was not provided a pay raise. Even after the 2005-2006 salary adjustments, Mr. Kennedy was paid more than any principal or assistant principal in the district except the high school principal.  It is uncontroverted that Mr. Kennedy had less responsibility than and was, in fact, subordinate to Guthrie School District's high school principal. The Guthrie School District's classification of Mr. Kennedy as an assistant principal does not raise a reasonable inference that its stated reasons for failing to grant Mr. Kennedy a pay raise were mere pretext for race discrimination.  The Guthrie School District asserts that the court may not properly consider Mr. Kennedy allegation that repairs to Faver were consistently refused or delayed while other schools in the district were given preference. It is true that Mr. Kennedy failed to properly exhaust claims based upon those allegations and the court lacks jurisdiction to consider unexhausted claims arising from such discrete acts of discrimination. *See* National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003).  However, nothing bars Mr. Kennedy from proffering evidence of unexhausted instances of discriminatory conduct as "background evidence" supporting his properly exhausted race discrimination claim. Id.

It is undisputed that for sometime prior to the Guthrie Schools District's salary adjustments, Mr. Kennedy had complained about the condition of Faver. Nothing in the record, however, suggests the Guthrie School District neglected Faver because of Mr. Kennedy's race.  While Mr. Kennedy testified in his deposition that he believed Faver's maintenance issues would have been addressed more promptly had he not been black, his belief, however sincere, is an insufficient basis for denial of summary judgment. *See* Panis v. Mission Hills Bank, N.A., 60

F.3d 1486, 1491 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996) (mere conjecture that an employer's explanation is pretext will not defeat summary judgment). Once the Guthrie School District articulated a legitimate, nondiscriminatory reason for its decision not to increase Mr. Kennedy's salary, it was incumbent upon him persuade the court that that reason was unworthy of belief. Mr. Kennedy has failed to meet his burden of coming forward with evidence to establish a reasonable inference that the Guthrie School District's stated reason for failing to increase his salary is merely a pretext for race discrimination. The Guthrie School District's motion for summary judgment on Mr. Kennedy's race discrimination claim should, therefore, be granted.

      **2.**      **Mr. Kennedy's Retaliation Claim**.

Like Mr. Kennedy's race discrimination claim, his retaliation claim is governed by the McDonnell Douglas burden shifting framework. *See* McCue v. State of Kan., Dept. of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999). To establish a prima facie case of retaliation under Title VII, Mr. Kennedy must show first that he engaged in protected activity by opposing discrimination. Second, he must show that the Guthrie School District subjected him to a materially adverse act. Finally, he must show a causal connection between the protected activity and the employer's materially adverse action. *See* Wells v. Colorado Dept. of Transp., 325 F.3d 1205, 1212 (10th Cir. 2003); Burlington Northern Santa Fe Ry. Co. v. White, ___ U.S. ___, 126 S.Ct. 2405 (2006).

The Guthrie School District contends the uncontroverted facts show that Mr. Kennedy cannot make a prima facie case of retaliation. It argues that Mr. Kennedy's complaint to the Board president was not sufficient to establish the first element of his prima facie case because Mr. Kennedy could not reasonably have believed his lack of a pay raise to be attributable to his race. The Guthrie School

District also correctly asserts that Mr. Kennedy's complaint regarding the conditions at Faver is not a proper basis for his retaliation claim because it was not set forth in the charge of discrimination he subsequently filed with the Oklahoma Human Rights Commission. It is well established that unexhausted claims arising from discrete acts of discrimination fall outside the court's jurisdiction. *See* Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999), *cert. denied,* 528 U.S. 815 (1999) (the exhaustion of administrative remedies is a jurisdictional prerequisite to filing a civil action under Title VII); *see also* Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799 (10th Cir. 1997), *cert. denied* 522 U.S. 935 (1997). Mr. Kennedy's retaliation claim is limited to the retaliatory acts allegedly prompted by his complaint regarding his pay.

As discussed above, Mr. Kennedy has failed to offer any evidence that the Guthrie School District denied him a salary increase on the basis of his race. That dearth of evidence calls into serious question the reasonableness of Mr. Kennedy's belief that he was the subject of race discrimination. Although a mistaken but good faith belief that Title VII has been violated is sufficient to support a retaliation claim, that good faith belief must be reasonable. *See* Crumpacker v. Kansas Dept. of Human Services, 338 F.3d 1163, 1171 (10th Cir. 2003) *cert. denied,* 540 U.S. 1180 (2004). Here, Mr. Kennedy was not granted a pay raise in conjunction with a district-wide salary adjustment that increased the pay of approximately half of the district's administrators. Mr. Kennedy had responsibility for fewer students and a smaller staff than similarly-situated white administrators whose pay was not increased. Following the salary adjustment, Mr. Kennedy made more than any principal or assistant principal in the district with the exception of the high school principal to whom he was subordinate. The court

finds that in light of these uncontroverted facts, Mr. Kennedy could not reasonably have believed that the Guthrie School district denied him a salary increase on the basis of his race.

Even were Mr. Kennedy's belief that he had suffered race discrimination reasonable, he would nonetheless be unable to establish retaliation case under Title VII. The Superintendent's letter, which serves as the basis for Mr. Kennedy's retaliation claim, is not sufficient to establish the second element of his prima facie retaliation case because it did not constitute a materially adverse action. The Guthrie School District points to undisputed facts showing that the letter was not a formal plan for improvement, nor was it a demotion. Mr. Kennedy did not suffer any loss of salary or benefits as a result of the letter. He did not suffer any loss of position or title. The letter did not result in any formal change in Mr. Kennedy's employment status. In essence, the Guthrie School District argues that the Superintendent's letter caused Mr. Kennedy no harm.

Mr. Kennedy rightly notes that the United States Supreme Court recently altered the second element of a retaliation claim in Burlington Northern and Santa Fe Ry. Co v. White. *See* ___U.S. ___, 126 S.Ct. 2405 (2006). Burlington did not, however, dispense with the requirement that actionable retaliation be of a nature to produce an injury or harm. *Id*. at 2414. Here, evidence of harm is entirely lacking. When, as appears to be the situation in this case, an arguably intemperate complaint elicits an arguably intemperate response, Burlington does not make of that an actionable retaliation case. Rather, in Burlington, the Supreme Court concluded that to establish the second element of a Title VII retaliation claim, a plaintiff must show that the challenged "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington, 126 S.Ct. at 2415, *quoting* Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006).

Mr. Kennedy has failed to demonstrate that the Superintendent's letter would have dissuaded a reasonable employee from pursuing his rights under Title VII – which is precisely what Mr. Kennedy did in this case. Because Mr. Kennedy has failed to meet his burden to set forth a prima facie case of unlawful retaliation, the Guthrie School District's motion for summary judgment on that claim should be granted.

## Conclusion

For the reasons set forth above, the court hereby **GRANTS** the Guthrie School District's motion for summary judgment.

ENTERED this 22nd day of March 2007.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-1440p007(pub).wpd